UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CLUB LEVEL, INC.; and RYAN FILA, a single man, | |
| Plaintiffs, | NO. CV-12-0088-EFS |
| v. | |
| CITY OF WENATCHEE, a municipal corporation; WENATCHEE POLICE DEPARTMENT, an agency of the City of Wenatchee; CHIEF TOM ROBBINS in his individual capacity as Chief of the Wenatchee Police Department; CAPTAIN KEVIN DRESKER in his individual capacity as a Captain of the Wenatchee Police Department; SERGEANT CHERI SMITH in her individual capacity as a Sergeant of the Wenatchee Police Department; and SERGEANT MARK HUSON in his individual capacity as a Sergeant of the Wenatchee Police Department, | **ORDER DENYING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER** |
| Defendants. | |

A hearing occurred in this matter on April 4, 2012, in Spokane, Washington. Plaintiff Ryan Fila was present and was represented by Rodney Moody, who also represents Plaintiff Club Level, Inc. Patrick McMahon appeared on behalf of Defendants the City of Wenatchee, Tom Robbins, Kevin Dresker, Cheri Smith, and Mark Huson (collectively, "Defendants"). Before the Court was Plaintiffs' Motion for Temporary

ORDER ~ 1

1  Restraining Order.  ECF No. 4.  After hearing from counsel, and reviewing
2  the parties' submissions and applicable authority, the Court was fully
3  informed and denied Plaintiffs' motion.  This Order serves to memorialize
4  and supplement the Court's oral rulings.

## I.   Introduction

6      Plaintiffs Ryan Fila and Club Level, Inc. request a temporary
7  restraining order prohibiting Wenatchee Police Department (WPD) officers
8  from entering Club Level unless directly called for service by an
9  employee of Club Level or upon receipt of a direct request for service
10 from any Club Level patron.  ECF No. 4 at 1.  Defendants oppose
11 Plaintiffs' motion and ask that an exhibit to Mr. Fila's declaration be
12 stricken.

## II.  Background

14     Plaintiffs allege that WPD officers, acting largely at the direction
15 of WPD Sergeant Mark Huson and WPD Captain Kevin Dresker, have violated
16 Mr. Fila's rights 1) by having a too-frequent and overly-harsh presence
17 at Club Level; 2) by refusing to charge or cite individuals when
18 responding to calls for assistance at Club Level; and 3) by refusing to
19 investigate crimes reported by Mr. Fila personally.  Defendants deny
20 Plaintiffs' allegations.

21     Plaintiffs allege that WPD officers have had an unduly large
22 presence at Club Level because they conduct unsolicited walk-throughs
23 two-to-three times per night, and when doing so, they parade through the
24 nightclub in an imposing manner, physically block patrons' access to the
25 club's entrance and bar area, sniff patrons' drinks, and remain in the
26 nightclub for too long.  Plaintiffs allege that this interference with

ORDER ~ 2

Club Level's business is affecting the nightclub's gross income. Plaintiffs allege that WPD officers "constantly park across the street and watch the patrons coming and going from our business." Patterson Decl., ECF No. 9 at 5. Plaintiffs also allege that WPD officers arrested a Club Level security officer for videotaping the officers' actions inside the club, but concede that the security officer "apparently had some type of warrant out for his arrest." *Id*. In support of their argument that WPD officers are targeting Club Level, Plaintiffs use the results of public records requests to detail the number of WPD visits that other purportedly-similarly-situated Wenatchee bars receive. *See* Fila Decl., ECF No. 8 at 2-3.

Plaintiffs also allege that WPD officers have refused to charge or cite individuals when responding to calls for assistance at Club Level. Plaintiffs allege that WPD officers responded to an incident where an intoxicated man was brandishing a knife inside the nightclub but did not arrest or cite the man, instead releasing him inside the club with the knife. Plaintiffs also argue that WPD officers refused to cite three minors who were caught trying to gain admission to Club Level, but concede in their reply that the WPD merely "delayed the citation for minors using false identification for two weeks. . . ." ECF No. 35 at 4; *see also* Fila Decl., ECF No. 35-1 at 2 (acknowledging that the three individuals were cited but insinuating that the citation was only issued after Mr. Fila requested public records relating to the citation).

Finally, Plaintiffs allege that WPD officers have refused to investigate crimes reported by Mr. Fila personally and have harassed Mr. Fila. Plaintiffs assert that the WPD refused to follow through on two

ORDER ~ 3

reports made by Mr. Fila, one regarding an incident in which a rock was thrown through Mr. Fila's windshield, the other where Mr. Fila witnessed a hit-and-run collision that damaged his parked car.    Mr. Fila also asserts that WPD officers pulled him over for an improper lane change as he left Club Level at 2:30 a.m. on January 18, 2012; Mr. Fila was released with a verbal warning.    Finally, Mr. Fila alleges that he has received five parking tickets "in an area where it is highly unusual for anyone to receive a parking ticket," but provides no support for this assertion.    Fila Decl., ECF No. 8 at 6.

Plaintiffs allege that the WPD has acted as described above because its intent is to "shut the business down."    In support of this allegation, Plaintiffs cite a pair of emails sent by WPD Captain Kevin Dresker on February 28, 2011, and March 1, 2011.    Captain Dresker's February 28, 2011 email to WPD officers briefly discusses an incident where WPD officers responded to a fight occurring at Club Level, and concludes:

> My plan is to tell him that we will work with him (his club) to try and reduce the issues as much as we can or should as a Police Department (we already met once, a couple of months ago).
>
> It's my opinion that if these problems can't be solved, we (WPD) need to work more proactively on our own solutions, up to and including pressing for Liquor Control to shut the business down.
>
> Hopefully this business can self-police these issues.    We'll see.

Fila Decl., ECF No. 8-4 at 2.    Captain Dresker's March 1, 2011 email to WPD supervisors contains very similar language.    *Id*. at 3.    Plaintiffs also point to a January 2, 2011 email to the Liquor Control Board from

ORDER ~ 4

WPD Officer Kirk Drolet, stating that "[b]asically, we are brainstorming how to help Club Level/Volcano[1] from sucking up immense amounts of our time.  I figure a few expensive tickets will slow things down."  Fila Decl., ECF No. 8-5 at 2.

Plaintiffs also assert that the WPD officers have been engaging in this pattern of behavior because Mr. Fila is homosexual.  Finally, Plaintiffs make unelaborated assertions that the WPD officers' conduct is motivated by some aspect of Mr. Fila's friendship with WPD Officer Stephyne Silvestre.

On May 17, 2011, Mr. Fila sent a complaint to the City Clerk for the City of Wenatchee via email.  City of Wenatchee City Attorney Steve D. Smith responded to Mr. Fila on June 7, 2011, stating his conclusion that "there is insufficient evidence to support your complaint against the WPD, Chief Tom Robbins and Captain Kevin Dresker."  Smith Decl., ECF No. 28 Ex. A at 3.

On February 8, 2012, Plaintiffs filed the Complaint in this matter, alleging § 1983 claims for violations of Mr. Fila's Fourteenth Amendment rights to due process and equal protection, Mr. Fila's First Amendment right to association, and Mr. Fila's Fourth Amendment right to be free from unlawful search and seizure, as well as state-law claims for negligent supervision, defamation, false light, unlawful conspiracy, negligent infliction of emotional distress, and outrage.  ECF No. 1.  On February 23, 2012, Plaintiffs filed the instant motion for a temporary restraining order (TRO).

---

[1] Volcano is a bar located in the same building as Club Level.  Fila Decl., ECF No. 8 at 2.

ORDER ~ 5

**III. Discussion**

    **A.    Defendants' Motion to Strike**

In section II.D. of their response to Plaintiffs' motion, Defendants move to strike Exhibit A to Mr. Fila's declaration, ECF No. 8-1.  Exhibit A to Mr. Fila's declaration is a small table showing Club Level's gross income for each month of 2011.

Defendants object to this exhibit as "speculative hearsay that the reduction in income is a direct result of Police activities."  ECF No. 22 at 17.  However, the table in Exhibit A is simply that: a table showing the nightclub's monthly income.  And it is attached to the sworn declaration of the nightclub's owner, who has personal knowledge of the nightclub's finances.  Accordingly, the Court will consider this data regarding the club's income, and denies Defendants' motion to strike Exhibit A to Mr. Fila's declaration.

    **B.    Plaintiffs' Motion to File Supplemental Materials**

On March 30, 2012, Plaintiffs filed a Motion to File Supplemental Materials, ECF No. 36.  Plaintiffs ask the Court to consider four additional declarations in support their motion for a TRO.  Defendants oppose Plaintiffs' motion, but have submitted additional evidence of their own in opposition to Plaintiffs' motion.  *See* ECF No. 41.

Plaintiffs' supplemental materials describe an incident that occurred on March 28, 2012, in which WPD Sergeant Huson, WPD Officer Kissel, and an unidentified person in civilian clothing entered a reportedly-"Restricted" dressing room at Club Level.  Though Plaintiffs' filings are untimely, they relate to an incident that occurred after Plaintiffs' March 15, 2012 reply deadline, and they are relevant to

Plaintiffs' motion for a temporary restraining order.  Accordingly, as noted on the record, the Court grants Plaintiffs' motion and considers the supplemental materials filed by both parties.

### C.    Temporary Restraining Order Standard[2]

The standard for issuing a TRO is "substantially identical" to the standard employed for issuing a preliminary injunction.  *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  Under that standard, courts may only grant preliminary injunctive relief when the plaintiff can "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  If the record before a court "consist[s] largely of general assertions which are substantially controverted by counter-affidavits, a court should not grant [a preliminary injunction] unless the moving party makes a further showing sufficient to demonstrate that

---

[2]    Under Federal Rule of Civil Procedure 65, temporary restraining orders may be issued for up to fourteen days "unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension."  Fed. R. Civ. P. 65(b)(2).  Because Plaintiffs' motion appears to seek relief lasting until the resolution of this matter, it is best viewed as a motion for preliminary injunction, but the distinction is one of form rather than substance.

he will probably succeed on the merits." *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088-89 (9th Cir. 1972). "A preliminary injunction is not a preliminary adjudication on the merits: it is an equitable device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Textile Unlimited, Inc. v. A..BMH and Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001).

**D.   Analysis**

An analysis of the four *Winter* factors demonstrates that Plaintiffs' motion for a TRO should be denied; Plaintiffs have shown at best a mild likelihood of success on the merits, but have not shown that they are likely to suffer irreparable harm in the absence of a TRO. Moreover, the public interest weighs very strongly in Defendants' favor. For the reasons discussed below and expressed on the record, the Court denies Plaintiffs' motion at this time.

**i.   Likelihood of Success on the Merits**

It is not clear which claim or claims Plaintiffs base their motion for a TRO on. Plaintiffs' memorandum in support of their motion mentions "due process" only once, and does not mention any of Plaintiffs' other claims. Plaintiffs' reply memorandum, however, does not mention due process, and instead devotes a full section heading to Plaintiffs' Fourth Amendment claim, which is the only claim mentioned in the reply. Accordingly, because Plaintiffs have not raised the majority of their claims in regard to their motion for a TRO, the Court addresses Plaintiffs' motion with regard to their Fourteenth Amendment due process and Fourth Amendment search and seizure claims only.

/

### a.   Qualified Immunity

As a preliminary matter, Defendants assert that they are entitled to qualified immunity from Plaintiffs' § 1983 claims.  Defendants argue that this defense will effectively be "lost" if the Court issues a TRO, drawing an analogy to the oft-cited axiom that qualified immunity "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985).  However, "[q]ualified immunity is only an immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief." *Hydrick v. Hunter*, 669 F.3d 937, 939-40 (9th Cir. 2012) (citing *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dept.*, 533 F.3d 780, 794-95 (9th Cir. 2008); *Los Angeles Police Prot. League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993)).  Accordingly, the Court rejects Defendants' argument that Plaintiffs will be precluded from succeeding on the merits of their claims for injunctive relief because of a qualified immunity defense.

### b.   Due Process Claim

The Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest in pursuing "the common occupations or professions of life." *Benigni v. City of Hemet*, 879 F.2d 473, 478 (9th Cir. 1989) (quoting *Schware v. Bd. of Bar Examiners*, 353 U.S. 232, 238-39 (1957)).  Plaintiffs' due process claim asserts that Defendants' actions are depriving Mr. Fila of this liberty interest without due process of law.

Plaintiffs rely heavily on *Benigni* in their moving papers, arguing that the factual similarities between this case and those in *Benigni*

ensure their success on the merits. *Benigni* involved a bar owner's claims that City of Hemet police officers violated his due process, equal protection, association, and Fourth Amendment rights by performing bar checks on a daily basis, following bar customers as they left, issuing parking tickets to bar staff and patrons, parking across the street and "staking out" the bar, and "herding" or "red lighting" traffic violators into the bar's vicinity, among other things. *Id.* at 475. A jury awarded the bar owner nearly $300,000.00 in compensatory and punitive damages. *Id.* On appeal, the Ninth Circuit found that the evidence in the case was sufficient to support the verdict, and affirmed the district court's judgment in the plaintiff's favor. *Id.* at 476. However, *Benigni* merely affirms that Plaintiffs have a viable due process causes of action, as the Ninth Circuit's sufficiency-of-the-evidence review was "extraordinarily deferential" because the defendant had failed to raise the issue below. *Id.* Furthermore, Defendants have presented a good deal of admissible evidence that tends to contradict Plaintiffs' claims: WPD Chief Tom Robbins states that "Mr. Fila requested walk-throughs at his establishment" and that "[h]e also suggested having Wenatchee patrol vehicles parked outside of his business, especially at closing, in order to control the number of fights," Robbins Decl., ECF No. 23 ¶ 14; and WPD Captain Doug Jones has provided police records tending to show that the WPD's visits to Club Level are proportional to the number of actual incidents occurring at the nightclub, Jones Decl., ECF No. 33. Furthermore, Club Level bartender Belinda Scott concedes that during the entire period between October 2011 and December 2011, the three months in 2011 during which Club Level's gross monthly income was the lowest,

1    she remembers seeing WPD officers in Club Level "on only one or two
2    occasions."  Scott Decl., ECF No. 13 at 3; *see also* Fila Decl., ECF No.
3    8-1 at 2.  Accordingly, the Court finds that Plaintiffs have at best a
4    mild likelihood of success on the merits of their due process claim.

5                    **c.   Fourth Amendment Claim**

6        Plaintiffs' Fourth Amendment claim argues that the WPD illegally
7    searched certain areas of Club Level.  The parties both agree that under
8    RCW 66.28.090, which requires premises that sell liquor to "at all times
9    be open to inspection by any liquor enforcement officer, inspector or
10   peace officer,"the WPD may enter public areas of Club Level at any time.
11   *See generally Dodge City Saloon, Inc. v. Wash. St. Liquor Control Bd.*,
12   271 P.3d 363 (Wash. App. Div. 2 2012) (rejecting Fourth Amendment
13   challenge to liquor board's entry into public area of bar because it was
14   not a "search").  Plaintiffs argue, however, that Sergeant Huson exceeded
15   the lawful scope of his rights when he entered certain areas of the
16   nightclub that are off-limits to the public.  As with Plaintiffs' due
17   process claim, Defendants dispute the factual basis of this claim.  *See*
18   Huson Decl., ECF No. 31 ¶ 49 ("I have not entered any area of Club Level
19   that does not meet with my understanding of RCW 66.28.090, the areas open
20   for inspection by Liquor Control officers and peace officers.").

21       Because Plaintiffs have provided only scant support for their Fourth
22   Amendment claim, and because Defendants have presented evidence that
23   tends to contradict Plaintiffs' evidence, the Court finds that Plaintiffs
24   have at best a mild likelihood of success on the merits of their due
25   process claim.

26   /

### ii.  Risk of Irreparable Harm

Plaintiffs argue that they are likely to suffer irreparable harm in the absence of a TRO because the WPD's actions interfere with Club Level's business and reduce its profits.  Plaintiffs also argue, without elaboration, that Club Level is in danger of closing because of the WPD's actions.

On the record before it, the Court finds that Plaintiffs are not likely to suffer irreparable harm in the absence of a TRO.  The Ninth Circuit has repeatedly stated that "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Tel. & Appl. Rental, Inc.*, 944 F.2d 957, 603 (9th Cir. 1991).  And while the closure of Club Level *would* represent irreparable harm to Mr. Fila, he has only made oblique references to such a closure and has not demonstrated that is it "likely." *See Am. Trucking Ass'ns, Inc.*, 559 F.3d at 1052 ("[A]n injunction cannot issue merely because it is possible that there will be an irreparable injury to the plaintiff; it must be likely that there will be." (citing *Winter*, 555 U.S. at 20)).  Accordingly, the Court finds that this factor alone prohibits the issuance of a TRO.

### iii. Balance of the Equities

This factor weighs neither strongly in favor of a TRO nor strongly against one.  On one hand, Plaintiffs' allegations of the WPD's discriminatory intent are serious, and if they have merit, the balance of the equities would support judicial intervention to prevent WPD's heavy-handed conduct.  On the other hand, as noted above, it is not clear that Plaintiffs' claims have merit, and as noted below, the public

interest weighs strongly against a TRO.  Accordingly, the Court finds that this factor neither supports nor undermines Plaintiffs' position.

### iv.  Public Interest

The public interest weighs strongly against the issuance of a TRO. There is a strong public interest in allowing law enforcement officers to carry out their duties, and a TRO would impede the WPD's ability to enforce the state's alcohol, DUI, and assault laws, among others. Furthermore, as defense counsel notes, a TRO would have significant negative repercussions when the public learns that Club Level is essentially "off-limits" to law enforcement.  And while Plaintiffs argue that the public interest would not be served by permitting the WPD to continue to engage in constitutional violations, but as noted above, this assertion is not borne out by the record currently before the Court. Accordingly, the Court finds that this factor weighs strongly against Plaintiffs' motion.

**IV.  Conclusion**

For the reasons discussed above and on the record, the Court denies Defendants' motion to strike, grants Plaintiffs' motion to file supplemental materials, and denies Plaintiffs' motion for a TRO.

Accordingly, **IT IS HEREBY ORDERED:**

1.  Defendants' Motion to Strike, **ECF No. 22**, is **DENIED**.

2.  Plaintiffs' Motion to File Supplemental Materials, **ECF No. 36**, is **GRANTED.**

///

//

/

1    3.  Plaintiffs' Motion for Temporary Restraining Order, **ECF No. 4**,

2  is **DENIED.**

3    **IT IS SO ORDERED.**  The District Court Executive is directed to enter

4  this Order and provide copies to counsel.

5    **DATED** this ___5th___ day of April 2012.

6

7  _____S/ Edward F. Shea_____

                        EDWARD F. SHEA
8                     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  Q:\Civil\2012\88.TRO.lc2.wpd



ORDER ~ 14