UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CLUB LEVEL, INC.; and RYAN FILA a single man,<br><br>                    Plaintiffs,<br><br>     v.<br><br>CITY OF WENATCHEE, a municipal corporation; WENATCHEE POLICE DEPARTMENT, an agency of the City of Wenatchee; CHIEF TOM ROBBINS in his individual capacity as Chief of the Wenatchee Police Department; CAPTAIN KEVIN DRESKER in his individual capacity as a Captain of the Wenatchee Police Department; SERGEANT CHERI SMITH in her individual capacity as a Sergeant of the Wenatchee Police Department; and SERGEANT MARK HUSON in his individual capacity as a Sergeant of the Wenatchee Police Department,<br><br>                    Defendants. | No.   CV-12-0088-EFS<br><br>**ORDER GRANTING IN PART AND DENYING AS MOOT IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFFS' STATE-LAW CLAIMS WITHOUT PREJUDICE, AND CLOSING FILE** |

## I.   INTRODUCTION

Before the Court, without oral argument, is Defendants City of Wenatchee, Wenatchee Police Department, Chief Tom Robbins, Captain Kevin Dresker, Sergeant Cherie Smith, and Sergeant Mark Huson's (collectively, "Defendants") Motion for Judgment on the Pleadings, ECF No. 86,[1] and Motion for Summary Judgment, ECF No. 103.  Defendants ask

---

[1]  Defendants' motion, ECF No. 86, was originally captioned as a Partial Motion to Dismiss for Failure to State a Claim.  By separate Order dated

the Court to grant summary judgment on Plaintiffs Club Level, Inc. and Ryan Fila's Due Process, Equal Protection, Fourth Amendment, and First Amendment claims (the "federal claims"), as well as their negligent supervision, defamation, false light, unlawful conspiracy, negligent infliction of emotional distress, and outrage claims (the "state-law claims"). ECF No. 103. Defendants also move for judgment on the pleadings on Plaintiffs' state-law claims. ECF No. 86. Plaintiffs oppose both motions. Having reviewed the pleadings and the record in this matter, the Court is fully informed. For the reasons set forth below, the Court grants in part and denies as moot in part Defendants' motion for summary judgment, and dismisses Plaintiffs' state-law claims action without prejudice for lack of subject matter jurisdiction.

## II. BACKGROUND

Plaintiffs bring several claims against Defendants arising out of interactions between Plaintiffs and various Wenatchee Police Department ("WPD") officers; in particular, Plaintiff Fila objects to the manner in which the WPD officers have policed his nightclub establishment and their conduct toward him and others with whom he associates. Plaintiffs seek monetary damages and injunctive relief.

//

//

//

---

February 26, 2013, ECF No. 89, the Court construed the motion as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), as Defendants had already answered the Complaint.

ORDER GRANTING IN PART AND DENYING AS MOOT IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFFS' STATE-LAW
CLAIMS WITHOUT PREJUDICE, AND CLOSING FILE - 2

**A.   Factual History[2]**

Plaintiff Club Level, Inc. ("Club Level") is a Wenatchee-area business, owned by Fila, which operates a nightclub establishment by the same name. Club Level is licensed to sell liquor by the Washington State Liquor Control Board ("WSLCB"). Since Fila assumed control of Club Level in August 2010, Club Level's employees and its patrons have, on many occasions, required police assistance with disruptive patrons and other disturbances.

Police have repeatedly conducted "walk-throughs" of the business, ECF No. 115, at 4, which Plaintiffs believe were efforts to impact the nightclub's license to sell alcohol. *Id.* During one walk-through, Defendant Huson entered a private employee area. ECF No. 116, at 12. Additionally, after Club Level moved to a new location and began operating under a temporary liquor license, WSLCB Sergeant Stensatter cited the establishment for inadequate lighting and sought to "pull" the temporary liquor license as a result. ECF No. 116, at 11.

Plaintiffs allege that on numerous occasions, WPD officers have refused to remove disruptive individuals from Club Level after being

---

[2] In considering Defendants' summary judgment motion and reciting the relevant factual history, the Court 1) believed the undisputed facts and the non-moving party's evidence, 2) drew all justifiable inferences therefrom in the non-moving party's favor, 3) did not weigh the evidence or assess credibility, and 4) did not accept assertions made by the non-moving party that were flatly contradicted by the record. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255 (1986); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

asked to do so by employees, and that police have engaged in an ongoing effort to deprive Club Level of its liquor license. Plaintiffs contend Defendants have intentionally increased the police presence at Club Level as a form of harassment and to deter patrons from frequenting the nightclub. Plaintiffs allege that Sergeant Huson is largely responsible for WPD's enforcement actions towards Club Level. Fila, a gay male, alleges that Sergeant Huson is openly hostile towards gays and lesbians, and that his enforcement efforts arise from discriminatory animus.

In sum, Plaintiffs allege that WPD's treatment of Club Level varies significantly from the treatment accorded to other bars and nightclubs in Club Level's immediate vicinity. Fila alleges that police officers have conducted excessive records searches concerning him and his vehicles, have engaged in repeated and invasive surveillance of his residence, have targeted him for issuance of numerous parking tickets, and have refused to investigate acts of vandalism directed at his property. When Club Level employees have sought to videotape WPD officers engaged in law enforcement activity on the property, Plaintiffs allege that the WPD officers have threatened to arrest the employees for no cause. According to Plaintiffs, WPD has forwarded twenty-six police reports directly to WSLCB, ECF No. 116, at 15. Defendant Dresker indicated in internal department communications that WPD might need to pressure WSLCB to shut the business down. ECF No. 116, at 4.

Throughout much of Fila's strained interactions with WPD, he maintained a personal friendship with WPD Sergeant Stephyne Silvestre.

ORDER GRANTING IN PART AND DENYING AS MOOT IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFFS' STATE-LAW
CLAIMS WITHOUT PREJUDICE, AND CLOSING FILE - 4

In late 2010 and early 2011, Sergeant Silvestre was the subject of an internal WPD investigation over allegations of improper off-duty employment at Club Level. Defendant Dresker allegedly told Sergeant Silvestre that Fila was "the beginning and end of all [her] problems." ECF No. 166, at 19. During the same investigation, WPD Detective Sergeant Kruse interviewed several people, including those who had business relationships with Fila. In particular, Detective Kruse interviewed Ms. Gillian Bebruyn, the personal friend of Ms. Jan Thompson. Ms. Thompson is the daughter of Ileen Geddis, an elderly woman with whom Fila was residing in a professional caretaking role. Ms. Bebruyn stated to Detective Kruse "that it was her impression that [Fila] was a manipulative individual who was financially exploiting Ms. Thompson." Several statements to this effect were included in Detective Kruse's investigative report of Sergeant Silvestre, which was placed in her employment file and ultimately disclosed to the Wenatchee World newspaper following a Public Records Act request. Fila alleges these statements were defamatory and harmed his reputation and business.

**B.   Procedural History**

On February 8, 2012, Plaintiffs filed the instant Complaint. On February 23, 2013, Plaintiffs moved for a temporary restraining order prohibiting WPD officers from entering Club Level unless directly called for service by a Club Level employee or patron. ECF No. 4. On April 4, 2013, the Court orally denied Plaintiffs' motion, ECF No. 43, and supplemented the ruling with a written order the following day, ECF No. 44. Defendants answered the complaint on May 24, 2012. ECF

No. 45. Since that time, the parties have engaged in several discovery-related disputes. *See, e.g.,* ECF Nos. 53, 78, & 92. On February 22, 2013, Defendants filed a motion for judgment on the pleadings with respect to Plaintiffs' state law claims. ECF No. 86. On April 12, 2013, Defendants moved for summary judgment on all of Plaintiffs' claims. ECF No. 103.

### III. DISCUSSION

Although Defendants have filed motions for judgment on the pleadings and for summary judgment, for reasons of judicial economy, the Court only addresses the summary judgment motion as it pertains to Plaintiffs' § 1983 claims.

**A.   Legal Standard for Summary Judgment**

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden . . . [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-

87 (1986). "In the language of the Rule [56], the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B.  Analysis**

Plaintiffs assert four claims under § 1983, which provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a prima facie case under § 1983, the plaintiff must first show that the wrongful conduct was committed under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Defendants do not dispute their actions occurred under color of state law. *See, e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 999 (1982) (defining color of state law as "[m]isuses of power possessed by the virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.").

The second element of a § 1983 claim is that the wrongful conduct violated a constitutional right. *West*, 487 U.S. at 48. Defendants assert that Plaintiffs' § 1983 claims fail as a matter of law because Plaintiffs cannot show Defendants violated a

ORDER GRANTING IN PART AND DENYING AS MOOT IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFFS' STATE-LAW
CLAIMS WITHOUT PREJUDICE, AND CLOSING FILE - 7

constitutional right. Alternatively, Defendants assert they are entitled to qualified immunity on each of Plaintiffs' § 1983 claims.

### 1. Due Process Claim

Plaintiffs assert a due process violation based on Fila's right to pursue an occupation. ECF No. 115, at 3-5. Defendants argue summary judgment is appropriate because Plaintiffs cannot prove the elements of the claim.

The Fourteenth Amendment's Due Process clause has been interpreted to protect "a liberty or property interest in pursuing the 'common occupations or professions of life.'" *Lebbos v. Judges of Super. Ct., Santa Clara Cnty.*, 883 F.2d 810, 818 (9th Cir. 1989) (quoting *Benigni v. City of Hemet*, 879 F.2d 473, 478 (9th Cir. 1988)). To demonstrate a violation of this right, a plaintiff must show 1) an inability to pursue a profession and 2) "that this inability is due to the actions that were clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *FDIC v. Henderson*, 940 F.2d 465, 474 (9th Cir. 1991) (citing *Lebbos*, 883 F.2d at 818). The right to pursue an occupation is highly generalized, encompassing "the right to pursue an entire profession, and not the right to pursue a particular job." *Engquist v. Or. Dept. of Agric.*, 478 F.3d 985, 998 (9th Cir. 2007).

In *Engquist*, the court held that substantive due process does not protect a person's entitlement to a specific job. *Id*. at 999. In that case, the plaintiff Engquist worked in a laboratory for the Oregon Department of Agriculture but lost her position during a reorganization. *Id*. at 991. Enguist's supervisors made defamatory

1 statements about Engquist to two or three people in the industry, and
2 Engquist was subsequently unable to find work in her field of
3 "microbiology, food technology, and food science." *Id*. The court
4 found that Engquist's inability to find work was a result of her
5 highly specialized field, and not the defamatory statements. *Id*. at
6 999. The court determined that Enquist had offered no evidence
7 correlating the defamatory statements with her inability to find work.
8 *Id.; see also DiMartini v. Ferrin*, 889 F.2d 922, 927 (9th Cir. 1989)
9 (finding no due process violation when casino employee was allegedly
10 fired for not cooperating in an investigation because no evidence
11 showed former employee could not find work in the industry).

12     Plaintiffs rely heavily on *Benigni* in opposing summary judgment.
13 ECF No. 115, at 3-5. In *Benigni,* a bar owner claimed that the City of
14 Hemet's police officers violated his due process, equal protection,
15 free association, and Fourth Amendment rights by, *inter alia*,
16 performing bar checks on a daily basis, following bar customers as
17 they left, issuing parking tickets to bar staff and patrons, and
18 parking across the street to "stake out" the bar. *Benigni*, 879 F.2d
19 at 475. A jury awarded the bar owner nearly $300,000 in compensatory
20 and punitive damages. *Id*. On appeal, the Ninth Circuit found the
21 evidence in the case was sufficient to support the verdict for the
22 plaintiff. *Id*. at 476. However, the court in *Benigni* did not address
23 whether the bar owner had demonstrated sufficient deprivation of his
24 right to pursue a profession; instead, the Ninth Circuit's
25 sufficiency-of-the-evidence review was "extraordinarily deferential"
26 to the ultimate verdict. *Id.* Moreover, *Benigni* is unpersuasive

ORDER GRANTING IN PART AND DENYING AS MOOT IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFFS' STATE-LAW
CLAIMS WITHOUT PREJUDICE, AND CLOSING FILE - 9

because it was decided before the Ninth Circuit established the two-part test for right-to-pursue-occupation due process claims. *See, e.g., Henderson*, 940 F.2d at 474 (citing *Lebbos*, 883 F.2d at 818).

Under this two-prong test, Plaintiffs must first show that Fila is no longer able to pursue employment in the bar or nightclub industry. Fila alleges that Defendants acted with the intent to shut down Club Level; however, the Complaint does not indicate that Club Level has ceased operating, and even if it had, Plaintiffs have adduced no evidence that Fila has been unable to find other work in the industry.

As to the second prong, Plaintiffs offer no evidence that Defendants' actions were "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Lebbos*, 883 F.2d at 818. Even when viewed in the light most favorable to Plaintiffs, the evidence demonstrates that the officers were concerned about ongoing public disturbances being caused by Club Level's patrons, and that they began issuing citations for violations of statutes designed to protect the general welfare, health, and safety of the community. Plaintiff has provided no evidence to show that Defendants' actions were arbitrary or unreasonable.

In sum, even when viewed in the light most favorable to Plaintiffs, the record before the Court is insufficient as a matter of law to establish the elements of a substantive due process violation.

//

//

2.   <u>Equal Protection Claim</u>

Plaintiffs also allege an Equal Protection claim based on the amount of law enforcement activity at Club Level as compared to similar businesses in Wenatchee. Compl. ¶ 6.4, ECF No. 1, at 17. In response to Defendants' summary judgment motion, Plaintiffs voluntarily withdraw their Equal Protection claim. ECF No. 115, at 14. Therefore, summary judgment on this claim is moot.

3.   <u>Search and Seizure Claim</u>

Plaintiffs assert a Fourth Amendment claim based Defendant Huson's entry into an employee area inside Club Level. ECF No. 116, at 18. Defendants do not dispute Plaintiffs' account of this incident but instead move for summary judgment as a matter of law. Defendants cite RCW 66.28.090(1) and WAC 314-01-005, which explicitly require business with liquor licenses to make available for inspection at all times any area of the business that is available or open to customers or employees.

The Fourth Amendment gives all persons the right to be secure "against unreasonable searches and seizures." U.S. Const. amend. IV. To be a "search" under the Fourth Amendment, there are two requirements: "first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). The Supreme Court has recognized that an expectation of privacy exists in a commercial setting, albeit a lesser expectation than exists in an individual's home. *New York v. Burger*, 482 U.S. 691, 699 (1987). The

expectation of privacy is "particularly attenuated" in "closely regulated" industries. *Id*. The liquor industry has long been subject to "close supervision and inspection." *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 75 (1970); *see also* RCW 66.28.090-66.28.340.

Even assuming Plaintiffs had a subjective expectation of privacy in the employee area, Plaintiffs' claim fails as a matter of law because society does not recognize that expectation as reasonable. Washington has chosen to closely regulate the liquor industry and to authorize the inspection of liquor-licensed premises, and in particular, any areas of those premises which are open to customers or employees.[3]

Plaintiffs rely on a recent Washington case where a compliance check was not considered a search under the Fourth Amendment because the officers only entered public areas. *Dodge City Saloon, Inc. v. Wash. State Liquor Control Bd.*, 168 Wn. App. 388, 398 (2012). In essence, Plaintiffs distinguish *Dodge City* by suggesting that entry into a non-public area *would* constitute a search. Plaintiffs are correct that dicta from *Dodge City* suggests that an intrusion into areas not open to the public ordinarily requires a search warrant. *See id*. (citing *See v. City of Seattle*, 387 U.S. 541, 545 (1967)).

---

[3] The Revised Code of Washington requires all premises with a liquor to be open for inspection at all times by any liquor enforcement officer, inspector, or peace officer. RCW 66.28.090(1). Licensed premises are defined as all areas "under legal control of the licensee [which are] available to or used by customers and/or employees in the conduct of business operations . . . ." WAC 314-01-005.

ORDER GRANTING IN PART AND DENYING AS MOOT IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFFS' STATE-LAW
CLAIMS WITHOUT PREJUDICE, AND CLOSING FILE - 12

This dicta, however, predates the two-part reasonable-expectation-of-privacy standard set forth by the U.S. Supreme Court in *Katz*. And the *See* case, on which *Dodge City* relies, is inapposite; commercial warehouses are not a closely regulated industry in the way that the liquor industry is.

Even construing the facts in a light most favorable to Plaintiffs, they offer nothing to show that any subjective expectation of privacy they may have had in the employee area was reasonable.

### 4. First Amendment Claim

Plaintiffs assert a First Amendment claim based on Defendants' alleged interference in the personal relationship between Fila and Sergeant Silvestre. ECF No. 1, at 17. Defendants seek summary judgment because Plaintiffs have not produced evidence showing Fila's relationship with Sergeant Silvestre[4] has ceased since the alleged interference.

Plaintiffs' claim fails for two reasons. First, it is an impermissible derivative claim because it asserts the constitutional rights of a third party; and second, Plaintiffs have not adduced sufficient evidence of a First Amendment violation.

---

[4] Fila also alleges First Amendment claims relating to his relationship with Sergeant West and Officer Shaw. However, he offers no evidence with respect to the nature of his relationship — or the termination thereof — with respect to these officers. Moreover, he has not shown that his relationship with these officers is materially different from the relationship he maintains with Sergeant Silvestre. Accordingly, the Court declines to address Fila's claim with respect to Sergeant West and Officer Shaw.

*a.   Derivative Claim*

Constitutional rights are personal and cannot be enforced by third parties. *Buckley v. Fitzsimmons*, 20 F.3d 789, 795 (7th Cir. 1994); see also *Safouane v. Fleck*, 226 Fed. Appx. 753 (9th Cir. 2007). Courts generally do not entertain claims where a plaintiff asserts violation of another person's constitutional rights. *McCollum v. Cal. Dept. of Corr. & Rehab.*, 647 F.3d 870, 878 (9th Cir. 2011). That said, a plaintiff can establish third-party standing by showing "his own injury, a close relationship between himself and the parties whose rights he asserts, and the inability of the parties to assert their own rights." *Id.* (citing *Powers v. Ohio*, 499 U.S. 400, 408-09 (1990)).

In this case, Defendants' alleged act of pressuring Sergeant Silvestre to limit or terminate her contact with Fila was directed at Sergeant Silvestre, not Fila. Fila has not shown that his right to seek out and form relationships was affected, or that any of Defendants' conduct was intended to affect such rights. He also has failed to establish at least two of the three requirements of third-party standing: 1) harm to his relationship with Silvestre, and 2) Silvestre's inability to assert her own rights. To the extent Defendants' actions may have violated the rights of Sergeant Silvestre, she can pursue her own claim and vindicate her own rights.

*b.   First Amendment Violation*

Even if Defendants' actions could be construed as interfering with Fila's First Amendment right of association, Fila has failed to state an actionable claim. Fila must show that 1) the association was

protected, and 2) the governmental restriction on the relationship survives strict scrutiny. *See, e.g., Roberts v. U.S. Jaycees*, 468 U.S. 609, 617 (1984).

Freedom of association has two forms: intimate association and expressive association. *Id.* at 617. There is no protected "generalized right of social association." *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). Expressive associations can form "in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Jaycees*, 468 U.S. at 622. Intimate associations are the "choices to enter into and maintain certain intimate human relationships." *Id*. at 617. To determine if a relationship is intimate, the court looks to "size, purpose, selectivity, and whether others are excluded from critical aspects of the relationship." *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 546 (1987); *see also Jaycees*, 468 U.S. at 620.

For example, the relationship between roommates was recently found to qualify as an intimate association. *Fair Hous. Council of San Fernando Valley v. Roommate.com*, LLC, 666 F.3d 1216, 1220 (9th Cir. 2012). *In Roommate.com*, the court reasoned that people only have a few roommates, and they are selective in who they choose as roommates. *Id*. Additionally, as the court explained, there are few relationships more intimate than that of a roommate, who learns deeply personal information by virtue of cohabitation. *Id*.

In this case, Fila has offered no evidence that his relationship with Sergeant Silvestre was a protected association, There is no indication that the relationship shares any of the characteristics of

expressive association, such as pursuit of political or cultural goals. Likewise, there is no evidence the parties share an intimate association. Plaintiffs provide no facts showing the purpose or selectivity of the relationship, or whether others are excluded from its critical aspects. In the absence of such evidence, Plaintiffs have failed to raise a genuine issue of material fact about whether Fila's relationship with Sergeant Silvestre qualifies as a protected association. Summary judgment is therefore proper.

### 5. Qualified Immunity

Although the Court has concluded that Defendants are entitled to summary judgment on each of Plaintiffs' § 1983 claims for failure to state a claim, the Court also finds that Defendants are entitled to qualified immunity on each claim. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To avoid dismissal of claims on qualified immunity grounds, a plaintiff must show that 1) the defendants violated a constitutional right; and 2) the right was "clearly established" at the time of the alleged violation. *Id.* at 236.

"A [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right."

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The "existence of a statute or ordinance authorizing particular conduct is a factor" weighing in favor of concluding that a reasonable officer would consider the conduct constitutional. *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994).

Here, as to Plaintiffs' Due Process claim, Plaintiffs have not shown that every reasonable officer would have known that targeting a nightclub with lawfully issued citations, with the intent of forwarding them to the WSLCB, violated Plaintiffs' constitutional right to due process. Plaintiffs have cited no authority that would put a reasonable officer on notice of the wrongfulness of this conduct. In fact, there is authority to the contrary on this point. *See, e.g., Freeman v. City of Santa Ana*, 68 F.3d 1180, 1188-89 (9th Cir. 1995). At best, Plaintiffs have demonstrated that officers issued lawful citations and acted within the statutory power given to them, which is a significant factor in showing that a reasonable officer would consider the action constitutional. *Grossman*, 33 F.3d at 1209.

As to the Fourth Amendment claim, Plaintiffs again fail to show that every reasonable officer would have known that entering into the employee area would be a violation of a constitutional right. Washington's liquor enforcement laws require licensed premises to "at all times be open to inspection." RCW 66.28.090(1). This statutory authority strongly indicates that a reasonable officer would find

entry into the employee area to be constitutional. *Grossman*, 33 F.3d at 1209.

Finally, as to Plaintiffs' First Amendment claim, they have not demonstrated that every reasonable officer would have known that discouraging a fellow officer from having a social relationship with Fila amounted to a constitutional violation. Plaintiffs have not shown that every reasonable officer would have been aware that 1) the relationship between Silvestre and Fila was protected under the First Amendment as an intimate or expressive association, or 2) mere comments to Silvestre about her relationship with Fila violated Fila's rights.

Accordingly, even if Plaintiffs had stated viable claims under § 1983, the Court finds the individual Defendants are entitled to qualified immunity on all of Plaintiffs' constitutional claims.[5]

6.  <u>Dismissal Without Prejudice of State Law Claims</u>

When the Complaint was initially filed with this Court, the Court exercised original jurisdiction over Plaintiffs' § 1983 claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); the Court also exercised supplemental jurisdiction over Plaintiffs' state-law claims, pursuant to § 1367. *See* Compl. ¶ 2.3, ECF No. 1, at 2. Having now concluded that summary judgment is warranted on all of

---

[5] Plaintiffs' claims against the City of Wenatchee, which is premised on *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978), also fails. A required element of a *Monell* claim is a showing of a constitutional violation. *Long v. Cnty. Of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). Here, no constitutional violation has been shown.

ORDER GRANTING IN PART AND DENYING AS MOOT IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFFS' STATE-LAW
CLAIMS WITHOUT PREJUDICE, AND CLOSING FILE - 18

Plaintiffs' federal claims, the only claims remaining are Plaintiffs' state-law claims.

The Court may decline to exercise supplemental jurisdiction when it has dismissed the claims for which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). The relevant considerations when deciding whether to continue to exercise supplemental jurisdiction following dismissal of all federal claims are "judicial economy, convenience and fairness to litigants," and comity with state courts. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). These factors usually lead to dismissing the case without prejudice when no federal claims remain. *See Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994). Having carefully considered these factors, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. As this matter was originally filed with this Court and not removed from state court, remand is unavailable. *Pac. Gas & Elec. Co. v. Fibreboard Prods., Inc.*, 116 F. Supp. 377 (N.D. Cal. 1953) (citing § 1447(c)). Accordingly, the Court dismisses Plaintiffs' remaining state-law claims without prejudice. **Plaintiffs remain free to re-file these claims in state court; and pursuant to § 1367(d), the statute of limitations with respect to these claims shall be tolled while this suit has been pending and for thirty (30) days following entry of this Order, unless Washington law provides for a longer tolling period.**

### IV.  <u>CONCLUSION</u>

Plaintiffs have failed to adduce sufficient evidence to support their constitutional claims. Even if Plaintiffs had shown a

constitutional violation, Defendants are entitled to qualified immunity because none of their actions amount to a clear constitutional violation of which every reasonable officer would have been aware. And having found no further basis for federal subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, **ECF No. 103**, is **GRANTED IN PART** (Plaintiffs' Due Process, Fourth Amendment, and First Amendment claims) and **DENIED AS MOOT IN PART** (Plaintiffs' Equal Protection and state-law claims).

2. The Clerk's Office is directed to **ENTER JUDGMENT** for Defendants on Plaintiffs' Due Process, Fourth Amendment and First Amendment claims.

3. Defendants' Motion for Judgment on the Pleadings, **ECF No. 86**, is **DENIED AS MOOT**.

4. Plaintiffs' remaining state-law claims are **DISMISSED WITHOUT PREJUDICE**.

5. All other pending motions, deadlines, and hearings are **STRICKEN.**

6. The Clerk's Office is directed to **CLOSE** this file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this   1st   day of August 2013.

                               s/ Edward F. Shea
                             EDWARD F. SHEA
                   Senior United States District Judge

Q:\EFS\Civil\2012\88.sj.grant.close.lc2.docx

ORDER GRANTING IN PART AND DENYING AS MOOT IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFFS' STATE-LAW CLAIMS WITHOUT PREJUDICE, AND CLOSING FILE - 20